IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-HC-2163-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| MICHAEL GREY WHITEROCK, ) | |
| ) | |
| Respondent. ) | |

This case came before the court on July 30-31, 2012, for an evidentiary hearing to determine the merits of the government's petition to commit respondent Michael Grey Whiterock (hereinafter "respondent") as a "sexually dangerous person" pursuant to 18 U.S.C. § 4248 (hereinafter "§ 4248"). The court renders this memorandum opinion in amplification of its pronouncement that respondent shall be committed to the custody of the Attorney General.

BACKGROUND

The procedure for commitment under § 4248 was enacted as part of the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (hereinafter "Adam Walsh Act"). The statute authorizes the government to certify for commitment individuals within the custody of the Bureau of Prisons. 18 U.S.C. § 4248(a). Such certification automatically stays the person's release from custody, pending completion of the § 4248 proceedings, despite the expiration of the incarcerative portion of the person's criminal sentence. Id.

To obtain a commitment order pursuant to § 4248, the government must prove by clear and convincing evidence that the person

(1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5);

(2) currently "suffers from a serious mental illness, abnormality, or disorder"; and

(3) as a result of the illness, abnormality or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(6). See United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012).

"[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Hall, 664 F.3d at 461 (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) and citing Addington v. Texas, 441 U.S. 418, 423–24 (1979).

Respondent was 35 years old at the time of the evidentiary hearing. He is a Navajo Native American. At the time the government filed the certification commencing this commitment action, respondent was serving a term of 110 months imprisonment in the Bureau of Prisons for his 2002 conviction for aggravated sexual abuse of a minor. His projected release date was February 4, 2010, but the filing of the certification on December 21, 2009, stayed his release.

Respondent does not dispute that the first two elements for commitment are established. Therefore, the court's analysis focuses on the third element, whether respondent will have serious difficulty in refraining from sexually violent conduct or child molestation if released.

2

## COURT'S DISCUSSION

Regarding the third element for commitment under § 4248, the Fourth Circuit provided the following general guidance:

> [t]he "serious difficulty" prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. Kansas v. Hendricks, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); id. at 357 (noting that civil commitment statutes may "provide [ ] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety ... provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); see also Kansas v. Crane, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.") "[This] lack of control [or] inability to control behavior will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 534 U.S. at 413, 122 S. Ct. 867 (internal quotation marks omitted).

Hall, 664 F.3d at 463.

Although respondent does not dispute that the first two prongs are satisfied, the details of respondent's prior offense conduct and his present psychological disorders inform the court's analysis of the third prong. In March 1993, at age 15, respondent was arrested and pled guilty to charges involving the molestation of his 7-year-old sister. His sentence included 18 months of sex offender treatment, which he completed. In September 2001, at age 24, respondent molested a 4-year-old female cousin, a 10-year-old female cousin, and an 11-year-old male cousin. This conduct led to the 2002 conviction for which he was incarcerated at the time he was certified for

commitment. The parties stipulate and the court finds by clear and convincing evidence that respondent has engaged in child molestation.

The government presented the testimony of two psychologists, Jeffery Davis, Ph.D., and Rebecca Perkins, Psy.D. Dr. Davis is a private forensic psychologist, and Dr. Perkins is a forensic psychologist employed by the Bureau of Prisons. Respondent presented the testimony of a third psychologist, Roy Daum, Psy.D. The parties stipulated to the qualifications of each psychologist, and each was received as an expert witnesses.

Although some variation existed among the experts, all three diagnosed respondent with pedophilia, substance dependence, and antisocial personality disorder. The parties stipulate and the court finds by clear and convincing evidence that respondent suffers from these mental disorders and that they are serious mental disorders.

Despite the consensus among the experts as to respondent's diagnoses, Dr. Daum's opinion differs from those of Dr. Davis and Dr. Perkins as to whether respondent's disorders would result in him having serious difficulty in refraining from sexually violent conduct or child molestation if released. The court's determination of this prong involves consideration of respondent's volitional control. The statute does not permit commitment of individuals who are able to control themselves but who, nonetheless, are likely to choose to reoffend. Instead, § 4248 authorizes commitment only of those individual's with impaired ability to keep themselves from offending sexually.

Having considered the testimony of the psychologists, the court finds that respondent's disorders operate in connection with each other to impair his volitional control. The psychologists described respondent's pedophilia as a chronic, lifelong condition. He has acknowledged that he continues to have sexual thoughts and fantasies about children. Although a diagnosis of pedophilia

4

alone does not necessarily mean a person's volition is impaired or that he will commit a hands-on offense against a child, respondent's particular expression of the combination of pedophilia with substance dependence and antisocial personality disorder results in serious volitional impairment. The interaction of his disorders is demonstrated by the fact that respondent was drinking heavily at the time of his sexual offenses against his young relatives. His alcohol dependence serves to disinhibit controls over his behavior, making him more likely to act on his thoughts of arousal to children. In addition to respondent's history of molesting children, he has a significant history of non-sexual criminal offenses. This history contributed to his diagnosis of antisocial personality disorder, a pervasive pattern of disregarding and violating the rights of others. Respondent's antisocial personality disorder also interacts with his pedophilia. Respondent described his molestation of his cousins in 2001 as being motivated by anger at the children's mother. The fact that his sexual misconduct is motivated by revenge as well as deviant sexual arousal further demonstrates his lack of self-control.

The court credits the testimony of Dr. Davis, who noted that respondent's most recent sexual offending, which involved more victims and a younger victim than in the incident involving his sister, constituted an escalation of his offense behavior, despite the prior sanction and the completion of sex offender treatment. This escalation is clear evidence of respondent's volitional impairment.

The court finds respondent's testimony at the hearing to be lacking in credibility in that he minimized his offense conduct and fails to recognize the seriousness of his psychological conditions. Even Dr. Daum noted that respondent's testimony during the hearing lacked the candor he had when Dr. Daum interviewed him. Respondent has refused to participate in sex offender treatment while in custody. Although he did participate in limited substance abuse treatment while incarcerated, the

5

court finds this participation to be insufficient to address respondent's wide-ranging problems with volitional control.

The psychologists presented evidence of respondent's relative risk of reoffense using various actuarial instruments. For example, respondent scored a 5 on the Static-99R instrument, placing him in the moderate-high risk category. According to research on the Static-99R, 25% of offenders scoring a 5 in an identified high risk/needs sample were arrested or convicted for a new sexual offense within 5 years of release, and 36% were arrested or convicted of a new sexual offense within 10 years. Recidivism rates are circumstantially relevant to respondent's volitional control because individuals who repeatedly offend despite prior sanctions may be presumed to have considerable difficulty controlling their actions. The court considers the relative rate of recidivism ascribed to respondent, but places greater weight on the evidence relating specifically to respondent's offense history, his particular expression of his psychological disorders, the insufficiency of past treatment, and the testimony of the experts taken as a whole.

Both Dr. Davis and Dr. Perkins opined that respondent would have serious difficulty in refraining from sexually violent conduct if released. Dr. Daum testified, however, that he is unsure that respondent would have serious difficulty refraining. Dr. Daum interpreted respondent's conduct while incarcerated as indicating that he would not have serious difficulty refraining from future sexual offenses. He testified that if respondent were volitionally impaired, he would expect to see more misconduct within the prison setting with a primary focus on sexual misconduct. On a single occasion, prison staff located a sexually suggestive photograph of a young girl in respondent's possession during his federal incarceration, but there is no evidence he sought any additional material related to his pedophilia, such as ordering catalogs of children's clothing, as other § 4248 detainees

have done. Dr. Daum further opined that volitional impairment would manifest in non-sexual misconduct, such as fights and disagreements with other inmates. Although respondent has not been sanctioned for fighting while in prison, he did acknowledge fighting during the beginning of his federal incarceration. The court notes, however, that respondent's offense history of offending in the community did not involve the possession of child pornography or a fixation on visual depictions of minors; it involved contact molestation of minors. Obviously, there are no minors present in federal prison. Furthermore, respondent's non-sexual criminal history consisted of property offenses such as theft and burglary, not violent offenses. Therefore, the limited evidence of respondent possessing sexual materials or fighting while in prison is not indicative of a change in respondent's behavior.

Ultimately, Dr. Daum opined that respondent would benefit from continued treatment, both sex offender treatment and substance abuse treatment, but such benefit could be achieved in an outpatient, community setting. Dr. Daum further testified that treatment within the Native American community would be beneficial.

Although the court's inquiry is focused on respondent's personal volitional control, external factors involving the environment in which respondent would live if released are relevant to his ability to refrain from reoffending. Respondent testified that, if released, he would live with his mother, Alice Boone, in Utah. Ms. Boone testified that respondent would be welcome to live at her home. The court finds this plan is not conducive to respondent's ability to refrain from reoffending. In particular, respondent first offended while living with his mother. Their relationship during his childhood was volatile. Because of her job, she would not be able to supervise respondent's activities. Furthermore, Ms. Boone testified that she frequently babysits for relatives as young as 1-

7

or 2-years-old. The court finds that living in such a situation would adversely affect respondent's ability to refrain from sexually violent conduct or child molestation.

Having considered the totality of the circumstances, the court finds by clear and convincing evidence that, as a result of respondent's serious mental disorders, he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Therefore, all three elements for commitment are established.

Although the court is ordering respondent committed, this determination does not necessarily mean that respondent will be confined for the rest of his life. The statute provides for periodic review of the propriety of commitment. An annual report on respondent's condition will be submitted to the court, pursuant to 18 U.S.C. § 4247(e)(B). Furthermore, the director of the facility where respondent will be housed may prompt the court to release respondent by certifying to the court "that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment[.]" 18 U.S.C. § 4248(e). Finally, after the expiration of 180 days following each determination by the court regarding respondent's commitment, respondent may move for a hearing to determine whether he should be discharged. 18 U.S.C. § 4247(h). Should respondent participate and complete significant treatment while committed, the court will consider his discharge in proper course.

## CONCLUSION

As set forth in more detail on the record, and for the foregoing reasons, the court finds by clear and convincing evidence that respondent is a sexually dangerous person pursuant to § 4248. Accordingly, respondent is committed to the custody of the Attorney General.

8

SO ORDERED, this the 10 day of August, 2012.

                              LOUISE W. FLANAGAN
                              United States District Judge